NO. 07-04-0058-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 22, 2006

_____

GREGORY SHAWN BRYANT AND LINSEY KAY BRYANT,
INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE
OF KENNALEE D'LIN BRYANT, A DECEASED MINOR,

Appellants

v.

ERIC NICHOLAS LEVY, M.D., AMARILLO AREA HEALTHCARE
SPECIALISTS, L.L.P., NORTHWEST TEXAS HEALTHCARE
SYSTEM, INC.,

Appellees

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 89,510-E; HON. ABE LOPEZ, PRESIDING

_____

Before QUINN, C.J., REAVIS, J., and BOYD, S.J.[1]

### *ON MOTIONS FOR REHEARING*

Pending before the court are two motions for rehearing. The first is filed by Eric

Nicholas Levy, M.D., and Amarillo Area Healthcare Specialists, L.L.P. (AAHS). The

second is that of Northwest Texas Healthcare System, Inc. (Northwest). For the reasons

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2005).

which follow, I would grant both and affirm the trial court's summary judgment for the reasons which follow. *Levy/AAHS*

The claims of negligence asserted by Gregory Shawn Bryant and Linsey Kay Bryant, individually and as the representatives of the estate of Kennalee D'Lin Bryant (Bryants), are founded upon two propositions. The first involves the purported duty of Dr. Levy to insert chest tubes into the infant at 7:45 p.m. on the day she died. The second concerns the duty to perform a chest x-ray on the infant approximately three and one half hours earlier (*i.e.* 4:20 p.m.) to determine if she suffered from a pneumothorax. The breach of these duties purportedly caused the death of the child.

Regarding the former, the Bryants concede their expert testified that the insertion of the chest tubes at the time alleged would not have prevented the infant's death. Additionally, they cite to no evidence of record suggesting in any way that the infant would have survived had the tubes been inserted. Thus, I am unable to find a material issue of fact exists concerning whether the particular omission proximately caused the child's death.

As for the alleged failure to take a chest x-ray at 4:20 p.m., its importance is dependent upon the existence of a pneumothorax at that time. In other words, the Bryants averred that had the x-ray been taken then, Levy would have discovered a pneumothorax, treated the infant for same, and prevented her death. So, as can be seen, all is dependent upon proof that the infant was suffering from a pneumothorax at 4:20 p.m. If she was not, then the failure to order the x-ray and discover the pneumothorax could not be a substantial factor in the death for there was no pneumothorax to discover.

2

More importantly, I found no competent evidence of record suggesting it was more likely than not that the child suffered from a pneumothorax at that time. Indeed, comments were made by the Bryant's expert suggesting the rupture could have occurred later. He testified that 1) it was "possible" the pneumothorax occurred sometime *after* 4:20 p.m., 2) the possibility was one that he could not "exclude," and 3) there was no way of knowing (without a chest x-ray) whether the changes in Kennalee's situation at 4:20 p.m. were caused by a pneumothorax or another malady she experienced.

Furthermore, while the expert did utter that "the worsening mechanics [experienced by the child] were more likely than not caused by extra ventilatory air [*i.e.* a pneumothorax]," he failed to explain the basis for his conclusion. Instead, he simply said that "knowing that the child had a pneumothorax at 7:20 [p.m], and that at that time it was under tension and it caused the child to arrest" he was "lead[] . . . to ask what is more likely at 4:20 [p.m.], that the child had worsening disease, or had a pneumothorax that was becoming symptomatic . . . ." Then he concluded by saying ". . . I think that the arrest secondary to the pneumothorax indicates that worsening mechanics were more likely than not caused by extra ventilatory air." Why the presence of a pneumothorax under tension at 7:20 p.m. suggests a pneumothorax also existed three hours earlier goes unexplained, and there lies the problem. Without that explanation I am, and the trial court was, left to guess at the link. That very same void also renders the expert's opinion nothing more than *ipse dixit*.[2] And, an expert's *ipse dixit* is not competent evidence sufficient to create an issue of fact. *See Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) (stating that "[a]n

---

[2]*Ipse dixit* is a label appended to matter that one asserted but failed to proved. *Marvelli v. Alston*, 100 S.W.3d 460, 478 n.6 (Tex. App.–Fort Worth 2003, pet. denied), *quoting* BLACK'S LAW DICTIONARY 833 (7th ed. 1999).

3

expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts"); *Marvelli v. Alston*, 100 S.W.3d 460, 478 (Tex. App.–Fort Worth 2003, pet. denied) (stating the same).

In view of 1) the expert's testimony that it was possible the pneumothorax occurred after 4:20 p.m. and 2) the absence of explanation underlying his opinion that it had occurred by 4:20 p.m., I must conclude that no competent evidence of a pneumothorax at 4:20 p.m. appears of record. Without that evidence, I must also conclude that the Bryants did not sufficiently link their child's death to Levy's purported failure to have an x-ray done at that time.

The motion for rehearing should be granted, and the trial court's judgment should be affirmed.

*Northwest*

Of the several grounds urged by Northwest, I address only that involving the topic of causation. Northwest argues that the Bryants failed to present evidence sufficient to raise a question of fact regarding whether the conduct of Northwest's employees proximately caused Kennalee's death. I agree.

The Bryants attempted to establish the element in question through the testimony of their expert. The latter offered statistics about the general survival rate of children who contracted RSV and bronchiolitis, two ailments suffered by Kennalee.[3] Yet, it cannot be ignored that the infant also suffered from a pneumothorax. Because she did, any statistics involving the mortality rate of children who merely suffered from RSV and bronchiolitis fall

---

[3]The expert conceded that Kennalee's RSV and bronchiolitis were "very severe" and continued to worsen after the infant entered the hospital. Whether the maladies of those comprising the test group from which the statistics were taken were equally severe goes unmentioned. They may or may not have been.

4

short of establishing that Kennalee would have survived but for the purported negligence of Northwest's staff. *See Botello v. McWhorter*, No. 00 -07-0218-CV, 2001 Tex. App. LEXIS 177 at *10 (Tex. App.–Amarillo January 10, 2001, pet. denied) (noting that before statistics are probative on the issue of causation, their proponent must illustrate that the circumstances or conditions of the person involved in the instant suit were similar to those of people from whom the statistics were garnered). In other words, there must be a comparison of apples to apples, not apples to oranges, before the findings are probative.

Regarding the evidence that came closer to comparing apples to apples, I too find it flawed. The evidence about which I speak is that of the expert wherein he said Kennalee would not have had a cardiac arrest "had a pneumothorax been diagnosed at 4:20 [p.m.], and had it been appropriately evacuated." While it suggests that the infant may have survived, his opinion is nonetheless conditioned upon the discovery of a pneumothorax at 4:20 p.m. And, as discussed earlier, there is no competent evidence that Kennalee had such a condition at that time. Accordingly, I would also grant Northwest's motion for rehearing and affirm the summary judgment.

Brian Quinn
Chief Justice

5